## Case No. 12,164.

RUSSELL et al. v. UNITED STATES.

[15 Blatchf. 26.] [1]

Circuit Court, S. D. New York. July 1, 1878.

CUSTOMS DUTIES—SHIPBUILDING MATERIALS—EXEMPTIONS—SHIP BUILT FOR FOREIGN USE.

Under section 10 of the act of June 6, 1872 (17 Stat. 238), now sections 2513 and 2514 of the Revised Statutes, which provides that certain materials necessary for the construction and equipment of "vessels built in the United States for the purpose of being employed in the foreign trade," may be imported in bond, and that, on proof of the use of such materials for such purpose, no duties shall be paid thereon, such materials, when used in the construction of a merchant vessel built in the United States for the Japanese government, and employed by it for service between Japanese ports, and not documented as an American vessel, are not free of duty.

[Error to the district court of the United States for the Southern district of New York.]

[This was an action by the United States against William J. Russell and others. There was a verdict for plaintiff in the district court, and defendants brought error.]

Horace W. Fowler, for plaintiffs in error.

J. Dana Jones, Asst. Dist. Atty. for the United States.

WAITE, Circuit Justice. This was an action upon a warehouse bond, given by the plaintiffs in error to the United States, on the warehousing of a quantity of composition metal and copper nails, imported by them in October, 1872. The goods were withdrawn in accordance with instructions issued by the secretary of the treasury, to carry into effect section 10 of the act of June 6, 1872 (17 Stat. 238), now found in sections 2513 and 2514 of the Revised Statutes. That section is as follows: "That, from and after the passage of this act, all lumber, timber, hemp, manila, and iron and steel rods, bars, spikes, nails and bolts, and copper and composition metal, which may be necessary for the construction and equipment of vessels built in the United States for the purpose of being employed in the foreign trade, including the trade between the Atlantic and Pacific ports of the United States, and finished after the passage of this act, may be imported in bond, under such regulations as the secretary of the treasury may prescribe;

and, upon proof that such materials have been used for the purpose aforesaid, no duties shall be paid thereon: provided, that vessels receiving the benefit of this section shall not be allowed to engage in the coastwise trade of the United States more than two months in any one year, except upon payment to the United States of the duties on which a rebate is herein allowed; and, provided further, that all articles of foreign production needed for the repair of American vessels engaged exclusively in foreign trade, may be withdrawn from bonded warehouse free of duty, under such regulations as the secretary of the treasury may prescribe."

In the regulations adopted by the secretary of the treasury, pursuant to the authority of this act, it was provided, that no credit should be allowed upon the bond for the duties upon the goods withdrawn, until after the vessel had been registered or enrolled and licensed to engage in the foreign trade. With the exception of a small quantity, the goods, when withdrawn, were used in the construction of the steamers Capron and Kuroda, then being built in New York City, by Messrs. C. & R. Poillon, for the Japanese government. These steamers were merchant vessels, and were, on their completion, delivered to the Japanese government, and have, ever since, been used by that government in carrying freight and passengers between Japanese ports and Japanese and Chinese ports. They never took out any papers as American vessels. Upon this state of facts, the district court ordered a verdict in favor of the United States for the amount of the duties as liquidated by the collector, and gave judgment accordingly. This action of the court is now assigned for error.

It was manifestly the intention of congress, by this statute, to encourage the foreign carrying trade in American vessels. Such must have been the construction put upon the act by the secretary of the treasury when he adopted the regulations by which it was to be carried into effect, and such is the plain and obvious meaning of the language used: "Vessels built in the United States for the purpose of being employed in the foreign trade," cannot be made to refer to all foreign trade, without taking from one of the words its most appropriate effect. If all foreign trade was intended, why use the word "the" in that connection? "Employed in foreign trade" would have expressed that idea, without any ambiguity. Some effect, if possible, must be given to the additional word which has been used, and none seems so natural as that which particularizes the trade to be encouraged, and confines it to that of the country where the vessels are built. If the object of congress was to encourage American shipbuilding, why confine the exemption to such vessels as are employed in foreign trade; and if to protect the American shipbuilder, so that he may compete with foreign builders in constructing

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge, and here reprinted by permission.]

vessels for sale abroad, why was it not so said in words?

The second proviso, which was relied upon, in the argument, as showing an intention to include in the body of the act other than American vessels, has, to my mind, the contrary effect. Without the proviso, the benefits of the act would have been confined exclusively to materials used in the original construction of a vessel. The American owner, who had been encouraged to build his ship and engage in the foreign trade, would have been compelled, when repairs were needed, to go abroad and have them made, or pay the additional cost caused by the duties upon imported articles, if obtained at home. Therefore, still to encourage him, these duties were remitted in his favor, if his vessel was engaged exclusively in foreign trade. So far as the body of the act was concerned, he was permitted to engage in coastwise trade two months in a year without forfeiting his privileges.

Upon the whole, I cannot entertain a doubt, that the mischief which congress attempted to remedy was the loss of the foreign carrying trade by American ship owners, and that its legislation has been adapted solely to that end. Such is the effect which has been given to the statute by Judge Shepley, in the First circuit (U. S. v. Patten [Case No. 16,007]), and such also was the opinion of the attorney general of the United States, as given in respect to this very case, June 2, 1876. The judgment is affirmed.

---

RUSSELL (UNITED STATES v.).  See Case No. 16,209.